IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

STEVEN WADE GOODSON                                                                PLAINTIFF

V.                            NO. 4:25-CV-00425 KGB-JTK

COMMISSIONER of
SOCIAL SECURITY ADMINISTRATION                                                     DEFENDANT

### RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States Chief District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I. Introduction:**

On June 14, 2021, Steven Wade Goodson ("Goodson"), applied for Title XVI supplemental security income). (Tr. at 26). In the application, he alleged that his disability began on December 30, 2018. *Id*. The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, an Administrative Law Judge ("ALJ") found that Goodson was not disabled. (Tr. at 26-36). On March 5, 2025, the

Appeals Council, after reviewing newly submitted evidence from Goodson, declined to review the ALJ's decision. (Tr. at 1-6). Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Goodson has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision denying benefits.

## II.  The Commissioner's Decision:

The ALJ found that Goodson has not engaged in substantial gainful activity since the application date of June 14, 2021.[1] (Tr. at 28). At Step Two, the ALJ found that Goodson has the following severe impairments: history of right ankle fracture, mild scoliosis, history of cervical radiculopathy, degenerative disc disease, and history of gout. *Id.*

At Step Three, in a one paragraph discussion, the ALJ found that Goodson's severe impairments did not meet or equal a listed impairment.[2] (Tr. at 30). Next, the ALJ determined that Goodson had the residual functional capacity ("RFC") to

---

[1] For supplemental security income claims, the relevant time-period for determination of disability begins on the application date. (Tr. at 26).

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[2] 20 C.F.R. Part 404, Subpt. P, Appendix 1, "Adult Listing of Impairments."

perform work at the light exertional level, with additional restrictions: (1) no more than frequent stooping, crouching, bending, kneeling and crawling; (2) no more than occasional climbing of stairs; (3) can ambulate on level surfaces and cannot perform work tasks in construction or agriculture terrains; and (4) no more than frequent reaching overhead. *Id*.

At Step Four, the ALJ found that Goodson was unable to perform any of his past relevant work. (Tr. at 34). At Step Five, based on testimony from a Vocational Expert ("VE"), the ALJ determined that, based on his RFC, age, education, and work experience, there are jobs that Goodson can perform in the national economy, such as cleaner, cafeteria attendant, and mail clerk. (Tr. at 35-36). Therefore, the ALJ concluded that Goodson was not disabled. *Id*.

### III. Discussion:

    A.    Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

B.  Goodson's Arguments on Appeal

Goodson contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. Specifically, he argues that: (1) the RFC did not incorporate all of Goodson's limitations; (2) the ALJ erred in how he evaluated Goodson's subjective complaints; and (3) the ALJ erred at Step Three by not sufficiently discussing Listing 1.22. The Court finds support for Goodson's final

argument, and it limits its discussion thereto.[3]

Goodson broke his right ankle in 2019; subsequently, he had two fusion surgeries to repair the ankle. (Tr. at 31). Multiple objective imaging tests showed that after the surgeries, there was nonunion of the subtalar joint.[4] (Tr. at 32). Goodson was prescribed a wheelchair in 2020 for a limited time, to comply with non-weightbearing doctor's orders. *Id*. Goodson said he used the wheelchair regularly, with a handful of exceptions, for the remainder of the relevant time-period.

Goodson had a consultative examination with Carrie Fendley, MSN, in 2021. She noted that Goodson used a wheelchair and refused to tandem walk or to heel-toe walk. (Tr. at 32, 774-780). She concluded, after her complete examination, that Goodson had no limitations in sitting or standing, but that he could not perform any walking at all. (Tr at 780).

Goodson tried to do daily activities that required walking but was unable to do much. (Tr. at 270-275, 489=496). The ALJ overstated his ability to do household chores in the opinion (Tr. at 29-32); Goodson tried his best to live a normal life, but

---

[3] *See Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.")

[4] Nonunion is a serious complication of fusion surgery. https://www.advancedosm.com/pseudarthrosis-nonunion-orthopaedic-sports-medicine-specialist-cypress-houston-tx/.

his conditions and pain made daily activities overwhelming.[5]

Records submitted by Goodson's attorney after the 2024 hearing show that a wheelchair was prescribed indefinitely in August 2023. (Tr. at 139-142). The Appeals Council declined to exhibit this evidence, stating that it would not change the outcome of the case. (Tr. at 1-3).

Goodson argues that he met Listing 1.22 at Step Three of the sequential analysis. Listing 1.22 (Non-healing of complex fracture of the femur, tibia, pelvis, or one of more of the talocrural bones), requires that the claimant meet sections A, B, and C:

A. Solid union *not evident* on imaging and not clinically solid; and

B. Impairment-related physical limitation of musculoskeletal function that has lasted, or is expected to last, for a continuous period of at least 12 months; and

C. A documented medical need for a walker, bilateral canes, or bilateral crutches, or a wheeled and seated mobility device involving the use of both hands.

---

[5] *See Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005) ("the fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not consistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work").

20 C.F.R. Part 404, Subpt. P, Appendix 1, 1.22.[6]

As Goodson correctly points out, the ALJ's Step Three discussion was one paragraph long in an 11-page opinion, and the ALJ did not discuss in any detail Listing 1.22, or whether Goodson met the Listing. (Tr. at 30); Doc. No. 9 at 18-20. The ALJ only mentioned Listing 1.22 in his final sentence of the discussion: "In reaching this conclusion [that Goodson did not meet any Listing], the undersigned considered Listings 1.15, 1.18, 1.22, 12.04, and 12.06." *Id*. In this truncated Step Three discussion, the ALJ did not cite to Listing 1.22 criteria or to medical or testimonial evidence, and he did not explain his conclusions.

In finding that Goodson was not disabled, the ALJ stated that a wheelchair was only prescribed for a short time in 2020, and he mentioned the handful of times that Goodson showed up at doctors' appointments without an assistive device. (Tr. at 30-34). On occasion, Goodson also presented to appointments with a normal gait.

The ALJ's statements were an inaccurate representation of how much Goodson needed, or used, a wheelchair. This conclusion is not supported by the

---

[6] The Listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id*. At Step Three, the burden rests squarely on the claimant to show he meets a Listing. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

evidence as a whole. Goodson's treating and consultative providers indicated he needed a wheelchair, as a result of his ankle injury (and diagnosed gout). (Tr. at 30-34, 901, 969). The evidence of the prescription for a wheelchair in 2023 certainly could have changed the outcome, based on Listing 1.22.

Moreover, the ALJ glossed over the multiple medical records showing that there was a failed or incomplete union after the fusion surgery on Goodson's ankle. There was clear medical evidence of nonunion of the subtalar joint, such as required in paragraph A of Listing 1.22. The ALJ's Step Three error was not harmless, because if a claimant meets a Listing, he is disabled.

So, the Court finds that the record provided enough evidence to require further consideration and discussion of Listing 1.22 by the Administration.[7] Even setting aside the wheelchair factor, the ALJ failed to give good reasons for his findings on the critical Step Three issue, so reversal is required.[8]

---

[7] *See Zuhlke v. Berryhill*, 2019 WL 3457241 n.5 (D. Neb. July 31, 2019) (An ALJ must proceed beyond naming the relevant Listing; the ALJ must explain why the claimant does not medically equal the relevant Listing.) *See Hesseltine v. Colvin*, 800 F.3d 461, 466 (8th Cir. 2015) (when the ALJ concludes that the impairment does not medically equal a Listing, he or she must provide reasons for that conclusion, otherwise there is insufficient evidence to support said conclusion).

[8] An ALJ must build "an accurate and logical bridge" from the evidence to his conclusions. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Failure to do so frustrates meaningful review. *See St. Clair v. Colvin*, No. 2:12-04250-DGK-SSA, 2013 WL 4400832, at *5 (W.D. Mo. Aug 14, 2013) (adopting "logical bridge" analysis); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings at Step Three were insufficient for meaningful appellate review).

## IV. <u>Conclusion</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred at Step Three.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further administrative review.

DATED this 22nd day of September, 2025.

_____
UNITED STATES MAGISTRATE JUDGE